UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ANDREW SIMPKINS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| CORRECTIONS CORPORATION OF AMERICA, ET AL., | ) ) ) |
| Defendants. | ) ) |

No. 3:07-0948
Judge Trauger

## MEMORANDUM

## I. INTRODUCTION AND BACKGROUND

The plaintiff, proceeding *pro se* and *in forma pauperis*, is a prisoner in the South Central Correctional Facility (SCCF) in Clifton, Tennessee. He brings this action under 42 U.S.C. §§ 1983, 1985, and 1986 naming Corrections Corporation of America, Inc. (CCA) and twenty-eight (28) others as defendants, including Governor Phil Bredesen, senior CCA corporate officials, senior officials of the Tennessee Department of Correction (TDOC), and prison officials/members of the medical staff who were employed at SCCF at the time of the alleged events that gave rise to this action.[1] The plaintiff alleges that the defendants violated his rights under the Eighth Amendment. He seeks money damages, and injunctive and declaratory relief.

The "crux" of the plaintiff's complaint is that the defendants have been deliberately indifferent to his serious medical needs. (Docket Entry No. 1, ¶¶ 11-12) The plaintiff also alleges that the defendants engaged in a conspiracy between 2001 and 2007 to deprive him of his constitutional right to adequate medical care. (Docket Entry No. 1, ¶ 14; Docket Entry No. 2, ¶¶ 1-2) The alleged medical conditions to which the complaint pertains are recurring abdominal

---

[1] The plaintiff's claims are set forth in his original and first amended complaint. (Docket Entry No. 1-2)

hernias and a broken/dislocated right hand. (Docket Entry No. 1, ¶¶ 28-62; Docket Entry No. 2, ¶¶ 9-27)

According to the plaintiff, in late 2001 or early 2002, he began to experience "sharp, tearing, burning, bulging pains in both abdominal sides, combined with nausea and loss of appetite . . . ." (Docket Entry No. 1, ¶ 36) The plaintiff asserts that two years later, in 2004, he had surgery at Meharry Hospital to repair hernias that had developed in his groin. (Docket Entry No. 1, ¶ 40)

The plaintiff alleges that the guards who drove him from Meharry Hospital back to SCCF "drove recklessly," causing him to be "thrown around violently" while the guards "laughed and mocked" him. (Docket Entry No. 1, ¶ 43) The plaintiff also alleges that he received no special accommodations when he returned to SCCF. (Docket Entry No. 1, ¶¶ 44-46)

The plaintiff maintains that he continued to suffer with pain for six to eight months before a second surgery was performed. (Docket Entry No. 1, ¶¶ 48-49) According to the plaintiff, the surgeon at Meharry told him that he was unable to "address or repair the abdominal sides" where the hernias "originated and kept growing worse," because CCA would only pay for surgery on the hernias in the groin. (Docket Entry No. 1, ¶¶ 48-49) The plaintiff asserts that he did receive a "limited activity notice" at SCCF following his second surgery, but that no other post-surgery accommodations were provided.[2] (Docket Entry No. 1, ¶ 50)

The plaintiff asserts that, as recently as 2007, doctors at SCCF have told him that he needs to have a CT Scan to determine future treatment for his hernias, but that CCA will not pay for the procedure. (Docket Entry No. 1, ¶¶ 51-53, 56-57) The plaintiff maintains that the doctors at SCCF also have told him that "they could to a surgery again but the hernias would only keep coming back," and that, although they "felt sorry for him," he will have "to live with hernias the rest of his

---

[2] Although it is unclear from the complaint, it appears that the plaintiff may have undergone a third surgery in January, 2005. (Docket Entry No. 1, 48-49)

life . . . ." (Docket Entry No. 1, ¶ 55-56) The plaintiff alleges further that the "mesh" used in his prior hernia surgery has been "recalled" because it is known to "bust easily, cause infection, and inflamation." (Docket Entry No. 1, ¶ 57)

As to his broken right hand, the plaintiff claims that he broke his hand in February 2001 in an altercation with other inmates, "snapping his fourth metacarpal, dislocating the fourth finger, and seriously dislocating the third finger's base knuckle . . . ." (Docket Entry No. 1, ¶ 29) The plaintiff asserts that he received "an x-ray, pain pills, and an ace bandage with splint" following his injury, but that no follow-on treatment was provided. (Docket Entry No. 1, ¶¶ 30-35) According to the plaintiff, he has experienced "ever increasing and disability in . . . [his] 'still broken' and busted right hand," which he claims to have brought to the attention of the medical staff at SCCF as recently as September 2007. (Docket Entry No. 2, ¶¶ 11, 18).

## II. ANALYSIS

To establish a violation of his constitutional rights resulting from a denial of adequate medical care, the plaintiff must show that the defendants were deliberately indifferent to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Brooks v. Celeste*, 39 F.3d 125, 127 (6th Cir. 1994). "Deliberate indifference" is the reckless disregard of a substantial risk of serious harm; mere negligence, or even gross negligence, will not suffice. *Farmer v. Brennan*, 511 U.S. 825, 835-36 (1994); *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999)(*en banc*); *Westlake v. Lucas*, 537 F.2d 857, 860-61 n. 5 (6th Cir. 1976); *see also Estelle*, 429 U.S. at 105-06. An Eighth Amendment claim of denial of medical care claim has both an objective and subjective component. The objective component requires that the plaintiff's medical needs were sufficiently serious. *See Rhodes v. Chapman*, 452 U.S. 337 (1981); *Hunt v. Reynolds*, 974 F.2d 734, 735 (6th Cir. 1992). The subjective component requires that the prison officials were deliberately indifferent to the plaintiff's medical needs. *See Wilson v. Seiter*, 501 U.S. 294 (1991); *Hunt*, 974 F.2d at 735.

3

Complaints of malpractice or allegations of negligence are insufficient to entitle a plaintiff to relief. *Estelle*, 429 U.S. at 105-06. A prisoner's difference of opinion regarding treatment does not rise to the level of an Eighth Amendment violation. *Id.* at 107. Further, where a prisoner has received some medical attention, but disputes the adequacy of that treatment, the federal courts are reluctant to second-guess the medical judgments of prison officials and constitutionalize claims which sound in state tort law. *Westlake*, 537 F.2d at 860 n. 5. Finally, to set forth a viable claim for the denial of medical care, the plaintiff must argue that his health suffered as a consequence of such alleged denial. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 401 (6th Cir. 1999).

Under the Prison Litigation Reform Act (PLRA), the Court is required to dismiss a prisoner-plaintiff's complaint if it is determined to be frivolous, malicious, or if it fails to state a claim on which relief may be granted. 28 U.S.C. § 1915A(b). A complaint is frivolous and warrants dismissal when the claims "lack[] an arguable basis in law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Claims lack an arguable basis in law or fact if they contain factual allegations that are fantastic or delusional, or if they are based on legal theories that are indisputably meritless. *Id.* at 327-28; *Brown v. Bargery*, 207 F.3d 863, 866 (6th Cir. 2000); *see also Lawler v. Marshall*, 898 F.2d 1196, 1198-99 (6th Cir. 1990). Although *pro se* complaints are to be construed liberally by the courts, *see Boag v. MacDougall*, 454 U.S. 364, 365 (1982), under the PLRA, "courts have no discretion in permitting a plaintiff to amend a complaint to avoid a *sua sponte* dismissal," *McGore v. Wrigglesworth*, 114 F.3d 601, 612 (6th Cir. 1997).

### A. Plaintiff's Claims Under § 1985

The plaintiff asserts that he is bringing this action under § 1985(1), (2) and (3). Section 1985(1) pertains to conspiracies to prevent or impede federal officials from performing their lawful duties. *See United Brotherhood of Carpenters and Joiners of America, Local 610, AFL-CIO, et al. v. Scott*, 463 U.S. 825, 839 n. 1 (1983). Section 1985(2) has two parts, the first of which pertains

4

to conspiracies to obstruct justice in federal courts. *See Kush v. Rutledge*, 460 U.S. 719, 721 n. 1, 725 (1983); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). The second part of § 1985(2) pertains to conspiracies to obstruct justice in state courts. *See Bragg v. Madison*, No. 00-3237, 2001 WL, 1041764, at * 6 (6th Cir. (Ohio))(citing *Kush*, 460 U.S. at 725). Section 1985(3) pertains to conspiracies aimed at interfering with rights that are protected against private as well as official encroachment, *Carpenters*, 463 U.S. at 833, based on some racial, or otherwise class-based, invidiously discriminatory animus, *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971).

The plaintiff's claims have nothing to do with conspiracies to prevent or impede federal officials from performing their lawful duties, nor do his claims have anything to do with conspiracies to obstruct justice either in state or federal court. Consequently, §§ 1985(1) and (2) are inapplicable to this action. As to § 1983(3), the plaintiff does not claim, nor can it be liberally construed from the complaint, that the alleged denial of medical care was based on racial or otherwise class -based discriminatory animus, nor are prisoners members of a protected class for purposes of § 1985. *See Rose v. Leaver*, No. 01-3881, 2002 WL1001028 at * 2 (6th Cir. (Ohio))(citing *Pryor v. Brennan*, 914 F.2d 921, 923 (7th Cir. 1990)). Consequently, none of the three sections under § 1985 is applicable under the facts alleged.[3]

As reasoned above, the plaintiff's claims under § 1985 lack an arguable basis in law or fact. Therefore, those claims will be dismissed as frivolous.

### B. Plaintiff's Claims Under § 1983

To state a claim under § 1983, the plaintiff must allege and show: 1) that he was deprived of a right secured by the Constitution or laws of the United States; and 2) that the deprivation was caused by a person acting under color of state law. *Parratt v. Taylor*, 451 U.S. 527, 535

---

[3] Title 42 U.S.C. § 1986 provides for a private cause of action under § 1985 against those who conspire to interfere with an individual's civil rights. Section 1986 does not, however, provide independent grounds for relief.

5

(1981)(overruled in part by *Daniels v. Williams*, 474 U.S. 327, 330 (1986)); *Flagg Bros. v. Brooks*, 436 U.S. 149, 155-56 (1978); *Black v. Barberton Citizens Hosp.*, 134 F.3d 1265, 1267 (6th Cir. 1998). Both parts of this two-part test must be satisfied to support a claim under § 1983. *See Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

### 1. Statute of Limitations

For actions brought under § 1983, the federal courts apply the state personal injury statute of limitations. *See Wilson v. Garcia*, 471 U.S. 261, 280 (1985)(overruled on other grounds by *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004). The statute of limitations for personal injury arising in Tennessee and brought under federal civil rights statutes is one year. Tenn. Code Ann. § 28-3-104(a)(3); *see Roberson, v. Tennessee*, 399 F.3d 792, 794 (2005); *Dellis v. Corrs. Corp. Of Am.*, 257 F.3d 508, 511 (6th Cir. 2001). Therefore, the statute of limitations for actions brought in Tennessee under § 1983 is one year. *See Sharpe v. Cureton*, 319 F.3d 259, 266 (6th Cir. 2003); *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1986).

Although the duration of the statute of limitations is governed by state law, federal standards govern when the statute begins to run. *See Wilson*, 471 U.S. at 267; *Sevier*, 742 F.2d at 272. The statute of limitations begins to run "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 857 (6th Cir. 2003); *see also Kelly v. Burks*, 415 F.3d 558, 561 (6th Cir. 2005); *Roberson*, 399 F.3d at 794. Ordinarily, the "discovery rule" applies to establish the date on which the statute of limitations begins to run, *i.e.,* the date when the plaintiff knew or through the exercise of reasonable diligence should have known of the injury that forms the basis of his action. *Sevier,* 742 F.2d at 273. This inquiry is objective and the court looks "to what event should have alerted the typical lay person to protect his or her rights." *Hughes v. Vanderbilt*, 215 F.3d 543, 548 (6th Cir. 2000); *see also Dixon v. Anderson*, 928 F.2d 212, 215 (6th Cir.1991).

6

The postmark on the envelope in which that plaintiff mailed his original complaint to the district court is dated August 20, 2007. (Docket Entry No. 1, Envelope) This is the date that the plaintiff is deemed to have filed this action. *See Richard v. Ray*, 290 F.3d 810, 813 (6th Cir. 2002)(extending the mailbox rule set forth in *Houston v. Lack*, 487 U.S. 266 (1988) to civil complaints filed by *pro se* petitioners incarcerated at the time of filing). Therefore, the alleged events that occurred prior to August 20, 2006 occurred outside the one-year statute of limitations for claims brought under § 1983.

The plaintiff asserts that the alleged actions of the defendants amounted to a "continuing deprivation under color of state law . . . ." (Docket Entry No. 1, ¶ 5) From this statement, the court liberally construes the complaint to allege that the events that occurred prior to August 20, 2006 are cognizable under the continuing violation doctrine.

The Sixth Circuit has held that case law pertaining to the continuing violation doctrine in the context of Title VII cases applies to claims brought under § 1983 in which the continuing violation doctrine is relied on in an effort to include claims that occurred beyond the one-year statute of limitations period. *Sharpe*, 319 F.3d at 267-268. However, Title VII "precludes recovery for discrete acts of discrimination or retaliation that occur outside the statutory time period." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002). "Each discriminatory act starts a new clock for filing charges alleging the act." *Id*. at 133. In other words, *Morgan* does not permit application of the continuing violation doctrine to "discrete acts of which [a plainitff] was immediately aware when they occurred . . . ." *Bell v. Ohio State Univ.*, 351 F.3d 241, 247-248 (6th Cir. 2003).

The alleged events to which the plaintiff refers that occurred prior to August 20, 2006 were discrete events of which he clearly was aware. Consequently, the continuing violation doctrine is inapplicable to those claims.

Notwithstanding that the continuing violation doctrine does not apply, the statute of

7

limitations may nevertheless be tolled in actions such as this that allege civil rights violations. *See Zipes v. Transworld Airlines, Inc.*, 455 U.S. 384, 397 (1982); *Andrews v. Orr*, 851 F.2d 146, 151 (6th Cir. 1988). Whether the courts apply equitable tolling depends on an analysis of the following factors: 1) lack of actual notice of filing requirements; 2) lack of constructive notice of filing requirements; 3) diligence in pursuing one's rights; 4) absence of prejudice to the defendant; 5) the reasonableness of a plaintiff remaining ignorant of the notice requirement. *Andrews*, 851 F.2d at 151 (citing *Wright v. State of Tenn.*, 628 F.2d 949, 953 (6th Cir. 1980)).

In his amended complaint, the plaintiff asserts the following with respect to the statute of limitations:

> Plaintiff is . . . mindful of the fact[] that certain facts and/or allegations could be barred by the statute of limitations. However, as will be set out in specific detail, the statute of limitations should be excused in this case, due to the Plaintiff's efforts to exhaust and/or resolve these claims through the institutional grievance process, and letters[,] phone calls, and e-mails sent by Plaintiff's power of Attorney; Rev. Deborah McClanahan."

(Docket Entry No. 2, ¶ 3) Although the plaintiff states that he will explain "in specific detail" why the statute of limitations should be waived, he does not do so in his amended complaint. Neither does he explain in his original complaint.

The plaintiff does not allege a lack of actual or constructive notice of the filing requirements, nor does he provide any reasons for not knowing about the statue of limitations that would make such ignorance on his part reasonable. Neither do the actions that he claims to have taken between 2001 and August 2006 excuse the fact that he sat on his rights for more than five years as to those claims that occurred during the time frame at issue. Accordingly, the court finds that the plaintiff's claims under § 1983 prior to August 20, 2006 are barred by the statute of limitations.

8

For the reasons explained above, the plaintiff's claims under § 1983 prior to August 20, 2006 lack an arguable basis in law or fact. Therefore, those claims will be dismissed as frivolous.[4]

### 2. Analysis of Plaintiff's Remaining Claims Under § 1983 During the Time Frame Not Barred By The Statute of Limitations

#### (a) Plaintiff's § 1983 Conspiracy Claim

Plaintiff asserts that the defendants engaged in a conspiracy to deprive him of necessary medical care. To establish a *prima facie* case of civil conspiracy under § 1983, the plaintiff must show that: 1) there was an agreement between two or more persons to injure another by unlawful action; 2) there was a single plan; 3) the alleged coconspirators shared in the general conspiratorial objective; 4) an overt act was committed in furtherance of the conspiracy; 5) the overt act injured the plaintiff. *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003)(citing *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)). Under § 1983, the conspiratorial objective must have been to deprive the plaintiff of a right arising under the Constitution or laws of the United States, *See Askew v. Millerd*, 191 F.3d 953, 957 (8th Cir. 1999); *see also Parratt*, 451 U.S. at 535, and the plaintiff must prove an actual deprivation of such a right, *Askew*, 191 F.3d at 957 (citing *Villanueva v. McInnis*, 723 F.2d 414, 416 (5th Cir. 1984)). Conspiracy claims "must be pled with some degree of specificity and . . . vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Spadafore*, 330 F.3d at 854 (quoting *Gutierrez v. Lynch*, 826 F.2d

---

[4] The claims that are barred by the statute of limitations are those set forth in ¶¶ 28- 50 of the original complaint, Docket Entry No. 1. The defendants to whom those claims pertain are: former Warden Kevin Myers, former Assistant Warden Linda Roschell, Dr. f/n/u Cobal, Physician Assistant f/n/u Cliff, nurse f/n/u Charlotte, nurse f/n/u Casteel, and nurse f/n/u King. Each of these defendants were employed at SCCF in the positions indicated at the time of the alleged events that are barred by the statute of limitations. Because the plaintiff's only allegations against these defendants fall outside the statute of limitations, this action is deemed dismissed against them in its entirety for frivolity. It appears from the complaint that defendant Edward, SCCF Health Administrator, was employed at SCCF throughout the entire period covered by the complaint. Although the plaintiff's claims against defendant Edward are barred by the statute of limitations for any alleged actions prior to August 20, 2007, the plaintiff's claims against defendant Edwards from September 20, 2006 and subsequent thereto are not.

9

1534, 1538 (6th Cir. 1987)).

Although the plaintiff alleges that the defendants engaged in a conspiracy against him, apart from his naked allegation to that end, he has provided no factual allegations to support such a claim. Although *pro se* complaints are held to less stringent standards than complaints prepared by an attorney, *see Boag*, 454 U.S. at 365, the courts are not willing to abrogate basic pleading essentials in *pro se* suits, *see Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1990). Specifically, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory. *See Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 437 (6th Cir. 1988). The less stringent standard for *pro se* plaintiffs does not compel the courts to conjure up unpled facts to support conclusory allegations. *Wells*, 891 F.2d at 594 (citing *Merritt v. Faulkner*, 697 F.2d 761 (7th Cir. 1983)).

Because the plaintiff fails to support his conspiracy claim against the remaining defendants with any factual allegations, his conspiracy claim under § 1983 is conclusory and, as such, subject to dismissal. *Smith v. Rose*, 760 F.2d 102, 106 (6th Cir. 1985); *Place v. Shepherd*, 446 F.2d 1239, 1244 (6th Cir. 1971). Accordingly, the plaintiff's conspiracy claim under § 1983 will be dismissed for failure to state a claim on which relief may be granted.

### (b) Plaintiff's Other Claims Under § 1983 Against Governor Phil Bredesen, TDOC Commissioner George Little, Former TDOC Commissioner Donal Campbell, Former Assistant TDOC Commissioner Jim Rose, Donald Westbrook, Roscoe Clayton, Michael Long, Eric Hagdison, Carolyn Jordan, Dr. R. Crants, Thomas Beasley, and Don Hutto

The plaintiff alleges that the above-named defendants were "direct participants in the acts and omissions . . . alleged . . . ." (Docket Entry No. 2, ¶¶ 5-7) However, apart from naming these individuals as defendants, both the complaint and amended complaint are utterly devoid of any factual allegations to support a claim against these defendants. Because the plaintiff has failed to

10

allege and show how these defendants violated his rights under the Constitution or laws of the United States, the plaintiff fails to satisfy the first part of the two-part test under *Parratt*, *supra* at pp. 5-6. Moreover, for reasons previously explained, *supra* at p. 10, the plaintiff's claim that these defendants were "direct participants" is conclusory.

For the reasons explained above, to the extent that these claims are not barred by the statute of limitations, the plaintiff's claims against these defendants lack an arguable basis in law or fact. Accordingly, these claims will be dismissed as frivolous.

### (c) Plaintiff's Other Claims Under § 1983 Against Dr. f/n/u Gants, Warden Cherry Lindamood, Former Associate Warden Daniel Pritchard, and Lisa Edward [5,6]

The plaintiff asserts that the above-named defendants "kn[e]w that the lower subordinates w[ere] violating [his] rights, and failed to prevent or correct the wrong doing." (Docket Entry No. 1, ¶ 63) The court liberally construes the complaint to allege that these defendants are liable under the doctrine of *respondeat superior*.

Apart from naming the individuals identified above as defendants, and asserting that they were aware of the actions of their subordinates and failed to intervene, the complaint is, once again, devoid of any factual allegations against these defendants during the time frame at issue. In other words, apart from his naked allegation, the plaintiff has, once again, failed to satisfy the first part of the two-part test under *Parratt*, *supra* at pp. 5-6. Moreover, for the reasons previously explained, *supra* at p. 10, the plaintiff's claims against these defendants are conclusory as well.

As reasoned above, to the extent that these claims are not barred by the statute of limitations,

---

[5] The plaintiff spells defendant Edward's first name as "Linda" in the style of the case, but as "Lisa" in that portion of the complaint where he identifies the defendants (Docket Entry No. 1, ¶ 23).

[6] The plaintiff also alleges that former Warden Myers and Assistant Warden Roschell are liable for the acts and omissions of their subordinates. However, as previously established, *supra* at p. 9 n. 4, the plaintiff's claims against these two defendants are barred by the statute of limitations.

11

the plaintiff's claims against the above-named defendants lack an arguable basis in law or fact. Accordingly, they will be dismissed as frivolous.

### (d) Plaintiff's Other Claims Under § 1983 Against Drs. f/n/u Marabal, f/n/u Walker, f/n/u/ Brooks, Paul Niner, f/n/u Lewis, and Nurse Practitioner "Reggie"

The plaintiff asserts that Drs. Lewis, Walker, Marabal, Brooks, and Paul Niner, have told him that he needs a CT Scan to determine future treatment for his hernias, but that CCA will not pay for the procedure. (Docket Entry No. 1, ¶¶ 53, 56-57; Docket Entry No. 2, ¶ 24) According to the plaintiff, Dr. Niner told him that he would order an ultrasound instead, but that the ultrasound "would not show abdominal wall hernias or femoral hernias." (Docket Entry No. 1, ¶ 57) The plaintiff asserts further that Dr. Walker and Marable told him that his hernias were so severe that, although they could do surgery again, "the hernias would only keep coming back . . . ." (Docket Entry No. 1, ¶ 55; Docket Entry No. 2, ¶ 24) In addition to the foregoing, the plaintiff claims that Dr. Niner told him that the mesh used in his earlier hernia surgeries had been "recalled" because it was "known to bust easily, cause infection and inflamation." (Docket Entry No. 1, ¶ 57; Docket Entry No. 2, ¶ 25) Finally, the plaintiff alleges that he spoke twice with defendant "Reggie" in September, 2007, and that he told defendant "Reggie" about the problems that he continued to experience with his hernias and his hand. (Docket Entry No. 2, ¶¶ 16-18)

While it is apparent from the complaint that the plaintiff has suffered and continues to suffer from hernias, it also is clear from the complaint that the plaintiff has had at least two surgeries to repair them, and that the defendant doctors at SCCF are prepared to order further surgery if required. As to the CT Scan, the plaintiff asserts that the doctors at SCCF ordered the procedure, but that CCA would not provide the funds. (Docket Entry No. 1, ¶ 52; Docket Entry No. 2, ¶ 24) It also is apparent from the complaint that the above-named doctors are prepared to order an ultrasound as an alternative diagnostic solution to the CT Scan. There is nothing in these facts that supports even

12

an inference that the above-named doctors have been deliberately indifferent to the plaintiff's medical needs as those needs pertain to the treatment of his hernias.

With respect to the recalled surgical mesh, the plaintiff alleges only that the mesh used in his earlier surgeries has been recalled, and that Dr. Niner told him that some of the "pain in the groin and illness" was likely due to the recalled mesh having been used in his earlier surgeries. The plaintiff does not allege, nor can it be liberally construed from the complaint, that any of the above-named defendants has not provided, or has refused to provide, the medical care necessary to deal with the problems caused by the recalled mesh. As previously established, *supra* at pp. 4, 10, not only is the district court not required to conjure up unpled facts to save a conclusory claim, to the extent that the plaintiff's reference to the surgical mesh is intended to imply a claim of malpractice or negligence, such claims do not rise to the level of a violation of the Eighth Amendment.

As to the plaintiff's alleged injured right hand, although the complaint shows that he brought this injury to defendant "Reggie's" attention in September, 2007, the plaintiff does not claim that he brought his injured hand to the attention of any of the above-named doctor defendants. Additionally, apart from alleging that he told defendant "Reggie" about his hand, the plaintiff does not provide any factual allegations regarding defendant "Reggie's" response. Specifically, the plaintiff does not allege, nor can it be liberally construed from the complaint, what, if anything, defendant Reggie did, or did not do, to violate the plaintiff rights under the Constitution or laws of the United States. Once again, not only has the plaintiff failed to satisfy the first part of the two part test under *Parratt*, *supra* at p. 5-6, his claim against defendant Reggie is conclusory for reasons explained, *supra* at p. 10.

For the reasons explained above, the plaintiff's claims against the above-named defendants lack an arguable basis in law or fact. Therefore, the plaintiff's claims against these defendants will be dismissed as frivolous.

13

### (e) Plaintiff's Other Claims Under
### § 1983 Against CCA, Inc.

As established in the previous section, the plaintiff alleges that Drs. Lewis, Walker, Marabal, Brooks, and Paul Niner, have told him that he needs a CT Scan to treat his hernias. The plaintiff alleges further that his "prison medical file shows a doctor did order a CT Scan but [he] never received [it], despite [the] doctor ordering [it], because CCA would not release the money." (Docket Entry No. 1, ¶ 52) Because the plaintiff alleges that members of the medical staff have told him that authorization to perform the CT Scan was denied by CCA for cost considerations, his claim cannot be construed as one based on speculation or personal opinion. (Docket Entry No. 1, ¶¶ 53, 57)

Taking costs into consideration when providing medical care to prisoners generally does not constitute deliberate indifference. *See Gil v. Reed*, 381 F.3d 649, 662 (7th Cir. 2004); *see also Brightwell v. Lehman*, 2006 WL 921702 * 8 (W.D. Pa., 2006). However, "when treatment is based solely on costs, deliberate indifference may be established or implicated where the inmate suffers an unnecessary detriment and is harmed in some way," *Martin v. Brooks*, 2005 WL 2218035 * 4 (E.D. Va., 2005), especially where prison authorities prevent an inmate from receiving treatment recommended by medical professionals, *see Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3rd Cir. 1979); *see also Verser v. Elyea*, 113 F.Supp.2d 1211 (N.D. Ill., 2000)(holding that declining to follow recommendations of medical specialist based on cost rose to the level of deliberate indifference).

Taking the plaintiff's claims as true, without a CT Scan, the doctors at SCCF do not appear to be able to treat his hernia condition properly. Consequently, the plaintiff is subject to pain that he would not otherwise be subjected to, a result that stems from CCA's alleged decision not to provide the CT Scan solely for cost reasons. If the CT Scan is necessary to treat the plaintiff, and those tests have been denied for cost reasons only, such denial would amount to a violation of the

14

Eighth Amendment. Because the plaintiff's claim is not facially frivolous, process will issue as to defendant CCA, Inc.

An appropriate Order will be entered.

_____
Aleta A. Trauger
United States District Judge